LLOYD (STEVENS v.). See Cases Nos. 13,-402 and 13,403.

## Case No. 8,435.

### LLOYD v. STROBRIDGE.

[16 N. B. R. 197;[1] 10 Chi. Leg. News, 1; 1 San Fran. Law J. 13.]

District Court, D. California. 1877.

BANKRUPTCY— PREFERENCE — KNOWLEDGE OF INSOLVENCY BY CREDITOR PREFERRED—PROMISE TO GIVE SECURITY.

1. Where the bankrupt at the time of giving a mortgage, in pursuance of a previous agreement, to secure a pre-existing debt, requests the creditor to permit him to secure other creditors in such instrument, such request is notice of the existence of such creditors and of the bankrupt's inability to pay them.

2. A creditor who has obtained a preference is chargeable with knowledge of facts, the existence of which he could have ascertained by the slightest effort.

3. It is not necessary that the creditor should know that the law prohibits him from taking the preference; it is enough if he knows such facts and circumstances as bring it within the prohibition of the law and make it a fraud in legal contemplation.

4. An oral promise, made at the time the debt is contracted, to give security if required, cannot be executed after the debtor has become insolvent.

[Cited in Douglass v. Vogeler, 6 Fed. 56.]

[This was a suit by John Lloyd, assignee, against J. H. Strobridge.]

HOFFMAN, District Judge. It cannot, I think, be doubted that the bankrupt was in a condition of utter insolvency at the time he executed the mortgage which the bill seeks to set aside. The real questions in the case are: Did the defendant have reasonable cause to believe that the bankrupt was insolvent, and did he know that a fraud on the act was intended?

1. The notes given for the original advances by defendant had remained unpaid for about two years. No part of the interest had been paid, except six hundred dollars, which was credited on account of interest then due, and which was the price of some horses sold by the bankrupt to the defendant. The latter states that he supposed that the interest accruing on other indebtedness was kept down by the profits arising from the milk ranchos which the bankrupt was operating. But he was fully

aware that the latter was unable to pay the interest on the notes held by himself. He was also aware that the bankrupt owed debts to a very considerable amount, which he was unable to pay; for he was urged by the bankrupt to accept a joint mortgage to himself and two other creditors, which he refused, and insisted on the fulfilment of the bankrupt's promise to give him a first mortgage on the distillery premises.

That the defendant had no accurate and detailed information as to the resources and liabilities of the bankrupt may be admitted. But the request of the bankrupt, to be permitted to secure other creditors in the instrument to be executed to the defendant, was notice to him of the existence of those creditors and of the bankrupt's inability to meet their demands. The circumstance that he demanded the mortgage which the bankrupt had promised to execute to him at any time when "he felt scared or dubious about his loan," and the fact that he asked for security, and not for a payment of a long over-due debt, indicate a knowledge on his part of his debtor's inability to satisfy his indebtedness.

The bankrupt seems to have entertained sanguine and, perhaps, visionary expectations of success in his distilling operations, under a patent in which he was interested, and hoped to extricate himself from his embarrassments by forming a stock company, and obtaining, by the sale of the stock, the means of paying his debts and carrying on his business.

But this project seems to have failed—at least so far as the defendant and his friends were concerned, and it was only on their definitive refusal to embark in the enterprise that the promised security was exacted. The slightest inquiry would have apprised the defendant of the bankrupt's real condition; for he seems to have been known, to almost all who had dealings with him, except the defendant, to be "hard up," or impecunious. The defendant had no right to wilfully close his eyes to facts, the existence of which he could have ascertained by the slightest effort.

I think that all the circumstances of the case, taken together, lead irresistibly to the conclusion that at the time this defendant received his mortgage, he not only had reasonable cause for believing, but was morally certain, that the debtor was insolvent.

If so, it follows that he knew, or is charged with the knowledge that he had no right to give a preference to any of his creditors, and that in doing so he committed a fraud upon the act [of 1867 (14 Stat. 517)]. Of course, it is not meant that either of these parties was guilty of any moral delinquency. They no doubt considered it fair and just that the debtor should redeem the promise made when he obtained his advances, to give security if required. But if the law forbade his fulfilment of that promise, and if in doing so he has given a preference, the transaction is in fraud of the act, and must be annulled.

---

[1] [Reprinted from 16 N. B. R. 197, by permission.]

It is not necessary that the creditor should know that the law prohibited him from accepting the preference, for, otherwise, ignorance of the laws could always be set up as a defence of the transaction. It is enough if the creditor knows such facts and circumstances as bring the act within the prohibition of the law, and make it a fraud in legal contemplation.

If I am right in these views, the security given in this case can only be sustained by virtue of the previous promise of the bankrupt to execute it. Whatever may be the law in England, it is settled in this country that a general promise, made at the time the debt is contracted, to give security if required, cannot be executed after the debtor has become insolvent. Bank of Leavenworth v. Hunt, 11 Wall. [78 U. S.] 394; Graham v. Stark [Case No. 5,676]; Ex parte Ames [Id. 323]; In re Jackson Manuf'g Co. [Id. 7,153].

And this is for the obvious reason that such a promise is merely a promise to give a preference if a preference should be called for. In Ex parte Ames Mr. J. Lowell seems to have inclined to the opinion that "a specific and definite security, unconditionally stipulated for in writing, may be given after a lapse of time and a change of circumstances." In Re Jackson Manuf'g Co. [supra], it is suggested that perhaps the security given on the faith of a contemporaneous oral promise to give a definite security might be sustained, on the ground that the money advanced was so far a part performance of the contract as to entitle the creditor to a specific performance.

But the decisions in England and America are nearly uniform, that payment of the purchase money is not of itself sufficient to take an oral promise to convey land out of the statute of fraud. Admission into possession, expenditure of money in meliorations of the estate, payment of increased rent, or the like, have always been required.

"I take it," observes Lord Redesdale, "that nothing is to be considered as part performance that does not put the party into a situation that it is fraud upon him unless the agreement is performed. For instance: if, upon a parol agreement, a man is admitted into possession, he is made a trespasser if there be no agreement. * * * Payment of money is not part performance, for it may be repaid, and then the parties will be just as they were before, especially if repaid with interest. It does not put a man who has parted with his money into the situation of a man against whom an action may be brought; for, in the case of Foxcraft v. Lyster [unreported], which first led the way, if the party could not have produced in evidence the parol agreement, he might have been liable in damages to an immense extent." Clinan v. Cooke, 1 Schoales & L. 41.

The learned editors of Leading Cases in Equity observe, in their note to Lester v. Foxcroft (1 Lead. Cas. Eq. pt. 2, p. 1054):

"It is fully settled at the present time that payment of the purchase-money is not, of itself, sufficient to withdraw a parol agreement from the operation of the statute, because the money may be recovered back at law." And for this numerous authorities are cited.

If this be the law, it results that the oral promise made by the bankrupt, to give a mortgage on the distillery, created no equitable charge or lien upon it, and the contract was not one which a court of law or equity would enforce in invitum. The creditor, therefore, had, by reason of that promise, no legal or equitable right to insist upon a preference over other creditors. If he has chosen to postpone his demand that the promise should be executed until the bankrupt was in a situation where the law forbade him to fulfil it, he must accept the consequences of his own indulgence or neglect. Let a decree be entered accordingly.